UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| LARRY NEWCOMB, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 5: 22-335-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| CITY OF IRVINE, KENTUCKY, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the plaintiffs' motion for a preliminary injunction which seeks to prevent the defendants from enforcing a zoning ordinance that prohibits the plaintiffs from moving additional mobile homes onto their property. The motion will be denied because none of the applicable considerations weigh in favor of granting the extraordinary relief sought.

**I.**

In January 2022, Plaintiffs Larry and Lauren Newcomb (hereafter, the "plaintiffs" or the "Newcombs") purchased a mobile home park located at 215 Hood Avenue in Irvine, Kentucky. The subject park was established in the 1950s and has 12 existing lots for mobile homes. According to the plaintiffs, residents have moved mobile homes in and out of the park over the years without issue. At the time of the Newcombs' purchase, there were six mobile homes in the park, mostly occupied by elderly, long-term residents.

After acquiring the property, the plaintiffs purchased additional mobile homes which they planned to place in the park and rent. But in May 2022, the Irvine Police Chief, Irvine

Mayor James Gross, and the Irvine City Attorney informally advised them that the city's zoning ordinance did not allow their intended expansion.

The Newcombs obtained a permit to operate a mobile home park from the Kentucky Cabinet for Health and Family Services on July 28, 2022. They then filed suit in the Estill Circuit Court on September 13, 2022, seeking a declaratory judgment that the zoning ordinance was invalid based on the county's failure to maintain a valid Planning Commission and Board of Adjustments in accordance with Chapter 100 of the Kentucky Revised Statutes. The plaintiffs alternatively sought a ruling that their desired use of the mobile home park was a nonconforming use that had not been abandoned by the plaintiffs or their predecessors in interest. The plaintiffs also sought to enjoin the defendants from enforcing the zoning ordinance. [Record No. 1-1] The state court denied the motion for an injunction, apparently finding that the plaintiffs had not made a showing of irreparable harm.

The Newcombs then filed an Amended Complaint in the Estill Circuit Court on November 21, 2022, adding a claim under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. Specifically, they alleged in the amended pleading that the defendants deprived them of their constitutionally protected property interest (the nonconforming use of the mobile harm park) without due process of law.

The defendants removed the matter to this Court on December 30, 2022. The plaintiffs filed a renewed motion for a preliminary injunction on January 20, 2023, and the Court held a hearing on February 1, 2023, during which the parties presented their respective arguments.

## II.

A preliminary injunction is an extraordinary remedy that should only be granted if the movants carry their burden of proving that the circumstances clearly demand it. *Overstreet v.*

*Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). The fundamental purpose of a preliminary injunction is "to preserve the status quo during litigation to avoid an irreparable injury." *BE the Bush Recovery Ministries v. Coffee Cnty., Tenn.*, 2023 WL 110775, at *2 (6th Cir. Jan. 5, 2023) (citing *Resurrection Sch. v. Hertel*, 35 F.4th 524, 531 (6th Cir. 2022)).

The Court considers the following factors in determining whether a preliminary injunction is warranted: (1) whether the movant has shown a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not issued; (3) whether the issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuing the injunction. *Overstreet*, 305 F.3d at 573. While these are factors to be considered, the existence of irreparable harm is generally "indispensable." *BE the Bush Recovery Ministries*, 2023 WL 110775, at *2 (citing *D.T. v. Sumner Cnty. Schs.*, 942 F.3d 324, 326 (6th Cir. 2019)).

### A. Likelihood of Success on the Merits

Chapter 100 of the Kentucky Revised Statutes governs planning and zoning. It provides for the creation of planning units, planning commissions, and boards of adjustment, which are responsible for creation of municipal zoning ordinances. The statute also provides, *inter alia*, that "before any zoning regulation may have legal effect within the planning unit, a board or boards of adjustment shall be appointed for the planning unit as stated in the agreement under which the unit operates." K.R.S. § 100.217(1)(a).

The parties agree that Irvine's Planning Commission adopted a Zoning Ordinance in 1970. [*See* Record No. 18-1.] It also created bylaws setting out the policies and procedures for the Planning Commission and Board of Adjustments, and provides that all members of the

Board of Adjustments and Planning Commission are appointed by the Mayor of Irvine. The bylaws also describe steps for individuals wishing to challenge zoning decisions. The Zoning Ordinance contains certain restrictions on mobile homes and mobile home parks with which the defendants contend the Hood Avenue park does not comply. *See id.* at 44-47.

In May 2022, both the Planning Commission and the Board of Adjustments appeared dormant. According to the plaintiffs, neither body had had any members or held meetings (as required by the bylaws) in approximately four years. The defendants explained that previous members had moved away or retired from these unpaid, volunteer positions and there simply had not been a need for the Commission or Board to act. The City reconvened a Board of Adjustments on November 14, 2022, and a Planning Commission in January 2023.

To prevail on a cause of action under 42 U.S.C. § 1983, a plaintiff must prove that the defendant deprived him of a right secured by the Constitution or laws of the United States and that the defendant was acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). The Fourteenth Amendment provides that a state may not "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend XIV § 2. Accordingly, certain substantive rights, such as life, liberty, and property, cannot be removed except pursuant to constitutionally adequate procedures. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). To establish a procedural due process claim pursuant to § 1983, the plaintiffs must establish: (1) that they have a life, liberty, or property interest protected by the Due Process Clause; (2) that they were deprived of that interest within the meaning of the Due Process Clause; and (3) that the state did not afford them adequate procedural rights prior to the deprivation. *Wedgewood Ltd. P'Ship I v. Twp. Of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010).

As a threshold matter, the plaintiffs must establish that they possessed a protected property interest. *Id.* at 352 (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). "Only after identifying such a right does [the Court] continue to consider whether the deprivation of that interest contravened the notions of due process." *Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 605 (6th Cir. 2016) (quoting *Wojcik v. City of Romulus*, 257 F.3d 600, 609 (6th Cir. 2001)). To have a property interest in a benefit, the plaintiff must have more than an "abstract need or desire" or "more than a unilateral expectation to it." *Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 756-57 (2005).

Here, the plaintiffs contend that their property interest is a preexisting nonconforming use of the property under K.R.S. § 100.253, which provides, in relevant part:

> (1) The lawful use of a building or premises, existing at the time of the adoption of any zoning regulations affecting it, may be continued, although such use does not conform to the provisions of such regulations, except as otherwise provided herein.
>
> (2) The board of adjustment shall not allow the enlargement or extension of a nonconforming use beyond the scope and area of its operation at the time the regulation which makes its use nonconforming was adopted, nor shall the board permit a change from one (1) nonconforming use to another unless the new nonconforming use is in the same or a more restrictive classification, provided, however, the board of adjustment may grant approval, effective to maintain nonconforming-use status, for enlargements or extensions, made or to be made, of the facilities of a nonconforming use, where the use consists of the presenting of a major public attraction or attractions, such as a sports event or events, which has been presented at the same site over such period of years and has such attributes and public acceptance as to have attained international prestige and to have achieved the status of a public tradition, contributing substantially to the economy of the community and state, of which prestige and status the site is an essential element, and where the enlargement or extension was or is designed to maintain the prestige and status by meeting the increasing demands of participants and patrons.
>
> (3) Any use which has existed illegally and does not conform to the provisions of the zoning regulations, and has been in continuous existence for a period of ten (10) years, and which has not been the subject of any adverse order

or other adverse action by the administrative official during said period, shall be deemed a nonconforming use. Thereafter, such use shall be governed by the provisions of subsection (2) of this section.

A nonconforming use constitutes a legitimate, vested property right and enjoys broad constitutional protection. *Felty v. Petty*, 2011 WL 832488, at *4 (Ky. Ct. App. Feb. 25, 2011) (citing *Dempsey v. Newport Bd. of Adjustments*, 941 S.W.2d 483 (Ky. Ct. App. 1997)). The determination of what constitutes an existing use is made on a case by case basis. *Legrand v. Ewbank*, 284 S.W.3d 142, 145 (Ky. Ct. App. 2008).

The parties do not appear to dispute that the mobile home park was established in the 1950s, prior to the existence of the zoning ordinance. If true, it is possible that the mobile home park "may be continued" even though it does not conform to the ordinance. *See* K.R.S. § 100.253. But even assuming *arguendo* that the plaintiffs' have a protected property interest in the nonconforming use of the mobile home park, the plaintiffs have not sufficiently alleged that they were denied adequate due process.

A plaintiff states a § 1983 procedural due process claim through one of two methods: (1) by demonstrating that he or she was deprived of property as a result of an established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived the plaintiff of property pursuant to a random and unauthorized act and that available state remedies would not adequately compensate for the loss. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). The plaintiffs contend that they were deprived of the nonconforming use of their property without formal notice and without opportunity for a hearing before a neutral decisionmaker. [Record No. 16-1, p. 9]

Boards of adjustment have the power to hear and decide cases where an applicant alleges that an administrative official erred in the enforcement of a zoning regulation. K.R.S.

§ 100.257. The plaintiffs contend that they did not request a hearing because there no board of adjustments existed at that time. The defendants, however, maintain that "had any formal request ever been made by the plaintiffs . . . certainly a board would have been convened to deal with it."

Unauthorized intentional deprivation of property does not constitute a violation of due process if a meaningful post-deprivation remedy is available for the loss. *Davis v. Ecorse*, 2008 WL 2478329, at *4 (E.D. Mich. June 17, 2008) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)). There is no suggestion that the plaintiffs asked the mayor or any other city official to convene the Board of Adjustment or for a formal hearing regarding the use of their property. Further, any person claiming to be aggrieved by a final action of the Board may appeal to the circuit court of the applicable county under K.R.S. § 100.347. *See also Ratliff v. Phillips*, 746 S.W.2d 405 (Ky. 1988) (observing that appellant could seek a writ of mandamus if the Board of Adjustments failed to act within 60 days as provided under K.R.S. § 100.263).

During the recent hearing on the Newcombs' motion, plaintiffs' counsel refused to consider that any post-deprivation remedy could be sufficient, but that remains an open question. Further, property owners must actively pursue their claim to raise a § 1983 due process action. *Eaton v. City of Solon*, 598 F. Supp. 1505, 1513 (N.D. Ohio 1984). Here, it is unclear what measures the plaintiffs took to put the defendants on notice that due process procedures were needed. On balance, the plaintiffs' likelihood of success on the merits is unclear and does not weigh in favor of granting a preliminary injunction.

### B. Irreparable Harm

A party seeking a preliminary injunction must demonstrate an irreparable injury. *Conn v. Deskins*, 199 F. Supp. 3d 1172, 1174 (E.D. Ky. 2016). The plaintiffs rely solely on the fact

that they allege a constitutional deprivation. *See Obergefell v. Kasich*, 2013 WL 3814262, at *6, n.1 (S.D. Ohio July 22, 2013) (observing that "when an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary") (footnote collecting cases). However, the alleged denial of procedural due process, without more, does not automatically trigger a finding of irreparable injury. *See Tiger Lily LLC v. U.S. Dep't of Hous. & Urban Dev.*, 499 F. Supp. 3d 538, 551 (6th Cir. 2020) (citing *Pub. Serv. Co. of New Hampshire v. Town of West Newbury*, 835 F.2d 380, 382 (1st Cir. 1987); *Seegmiller v. Accredited Home Lenders, Inc.*, 2011 WL 4964508, at *3 (D. Utah Oct. 19, 2011)). The situation at bar presents a stark contrast to cases involving the loss of fundamental rights that must be exercised within a certain period of time, such as the right to vote. *See A. Philip Randolph Inst. Of Ohio v. LaRose*, 493 F. Supp. 3d 596, 614 (N.D. Ohio 2020).

The plaintiffs have not explained why Court intervention is needed "to maintain the status quo." Further, the potential damages here are the type that are easily quantifiable. The plaintiffs contend that they purchased several mobile homes to move into the park, which they have had to store and/or sell due to the defendants' actions. [Record No. 16-1] Notably, the defendants report that the City has "absolutely no intention" of evicting or otherwise forcing current park residents to leave their homes. During the recent hearing, the plaintiffs' attorney was unable to identify any aspect of the potential damages that could not be measured. While counsel made reference to the plaintiffs' "bundle of sticks," and said that some of them had been taken away in May 2022, she did not point to any "stick" that could not readily be assigned a dollar value. Accordingly, this factor weights against granting injunctive relief.

### C. Substantial Harm to Others/Public Interest

Finally, the Court considers whether an injunction would result in substantial harm to others or serve the public interest. The plaintiffs contend that the public has a strong interest in the protection of citizens' constitutional rights. While this assertion is true, it is unclear at this stage whether a constitutional right is implicated.

The public also has a strong interest in the enforcement of zoning laws. And while afforded protection, a nonconforming use is not necessarily favored by the community as reflected in the adoption of zoning regulations prohibiting such use. *See Legrand* v. *Ewbank,* 284 S.W.3d 142, 145 (Ky. Ct. App. 2008) (citing *Attorney General v. Johnson*, 355 S.W.2d 305 (Ky. 1962) ("As a matter of policy and consistent with the spirit of zoning laws, nonconforming uses are to be gradually eliminated and are to be held strictly within their boundaries."). *See also Grannis v. Schroder*, 978 S.W.2d 328, 332 (Ky. Ct. App. 1997) (observing that "the policy and spirit of zoning laws are geared toward the gradual elimination of nonconforming structures).

The Court must strike a proper balance between the welfare of the public and the rights of the individual property owner. *Greater Harrodsburg/Mercer Cnty. Planning & Zoning Comm'n v. Romero*, 250 S.W.3d 355, 359 (Ky. Ct. App. 2008) (citing *Perkins v. Joint City-Council Planning Comm'n*, 480 S.W.2d 166 (Ky. 1972)). Granting an injunction may signal to the public that (consistent with the plaintiffs' suggestions) the Zoning Ordinance is invalid or that the current Planning Commission and Board of Adjustment do not have authority to act. On the other hand, it appears that, should the plaintiffs prevail, they can be made whole through the payment of monetary damages. As such, these final factors weigh against granting injunctive relief.

- 10 -

## III.

Based on the foregoing analysis, it is hereby

**ORDERED** that the plaintiffs' motion for a preliminary injunction [Record No. 16] is **DENIED**.

Dated: February 3, 2023.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky